G. & W. H. Corson, Inc. v. Commissioner.
G. & W. H. Corson, Inc. v. Commissioner
Docket No. 32243.
United States Tax Court
1953 Tax Ct. Memo LEXIS 184; 12 T.C.M. (CCH) 753; T.C.M. (RIA) 53242; June 30, 1953
*184 Richard L. Levy, Esq., 2635 Fidelity-Philadelphia Trust Building, Philadelphia, Pa., for the petitioner. Edward Pesin, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for 1945 in the amount of $2,396.54. The issue presented is the petitioner's basis for depletion of a limestone quarry acquired in 1928 in an exchange of the assets of a partnership for all of the capital stock of petitioner. Findings of Fact Petitioner is a Delaware corporation with its principal office at Plymouth Meeting, Montgomery County, Pennsylvania. Its return for the period involved was filed with the collector of internal revenue for the first district of Pennsylvania. The petitioner was incorporated on January 10, 1928, for the purpose of carrying on the business previously conducted by George Corson, Walter H. Corson and Philip L. Corson, as partners, trading as G. & W. H. Corson, hereinafter referred to as the "partnership." The petitioner was authorized to issue 1,000 shares of preferred stock at the par value of $100 per share and 3,000 shares of common stock without nominal or par value. Only the *185 common stock had voting rights and was to be issued for such consideration as fixed and determined from time to time by the board of directors. At the first meeting of the petitioner's board of directors held on January 13, 1928, the following preambles and resolutions, inter alia, were adopted: "Whereas, George Corson, Walter H. Corson and Philip L. Corson, trading as G. & W. H. Corson, a partnership, have offered to sell to this Company property as follows: "All their right, title and interest in the business carried on by them as a partnership, in accordance with a statement of assets and liabilities presented at this meeting, and dated December 31, 1927, in consideration of the issue of 1,000 shares of Preferred Stock of this Company of the par value of $100 each and 3,000 shares of the Common Stock of this Company without nominal or par value; and "WHEREAS, It appears to the Directors that such property is necessary for the business of this Company, and that the same is a full consideration for the issuance of the aboresaid capital stock; be it "RESOLVED, That this Company accept the offer of G. & W. H. Corson, a partnership, to sell to this Company the property described *186 above, and the Board of Directors do hereby fix said property as a full consideration for the issuance of 1,000 Shares of Preferred Stock of this Company, $100 par and 3,000 shares of the Common Stock of this Company, without par, and do declare the same is necessary for the business of this Company. "FURTHER RESOLVED, That the proposed agreement for the sale of said property presented at this meeting be and the same hereby is approved as to form, and the President and Secretary of the Company are hereby authorized and directed to execute said agreement in the name and on the behalf of this Company, and to affix the corporate seal thereto. "FURTHER RESOLVED, That the proper officers of the Company be and they hereby are authorized and directed to issue to the order of said G. & W. H. Corson, a partnership, the full paid Preferred Stock of this Company amounting in the aggregate to $100,000. and 3,000 shares of the Common Stock of this Company without par, as provided in said agreement. "FURTHER RESOLVED, That the stock to be issued in payment of the property shall include the stock subscribed by the incorporators, and that the Company accept in payment of subscriptions, as set *187 forth in the Certificate of Incorporation, the property agreed to be sold to the Company, as mentioned in the foregoing resolution. "Transfer of subscription from J. Vernon Pimm for thirteen shares, from E. M. MacFarland for one share and from R. L. Spurgeon for one share, in favor of Walter H. Corson, was presented and upon motion accepted." In 1920, George and Walter H. Corson, the then sole partners of the partnership of G. & W. H. Corson, entered into an agreement whereby Philip L. Corson was to become a partner. The agreement, inter alia, contains the following provisions: "Philip puts the sum of one thousand dollars ($1000.00) into the firm at this time and shall thereupon become a general partner with Walter and George, in the firm, and, subject to the interests of Walter and George as hereinafter stated, and the interest to be paid thereon, shall be entitled to all the profits of the firm. "George and Walter agree to, and hereby do, capitalize their respective interests in the firm at twenty-five thousand five hundred dollars ($25,500.00) each which amounts and which interests shall be treated as in the nature of preferred stock of the firm in regard to the payment *188 to them, of interest thereon, and as bonds of the firm, in that they shall be first liens upon the assets and property of the firm. "It is agreed by the parties for themselves and for the firm that Walter and George shall receive, and they agree to accept in lieu of a division of the profits of the business, the payment of seven per centum per annum upon their respective capitalized interests as set forth in the preceding paragraph of this agreement. The payment of this interest shall be cumulative but not compounded, and shall date from January 1, 1920. * * *
"Walter and Philip agree to be jointly, severally, and solely liable for all the debts of the firm now existing or hereafter to be created, and agree to indemnify George and to save him harmless against the payment of any judgments, either in assumpsit or tort that may be recovered or entered against the firm at any time." The partnership agreement was orally amended in 1922 to provide that the profits, after the payment of the seven per cent to Walter and George, were to be divided equally between Philip and Walter. On January 1, 1928, the books of the partnership showed the capital account of George to be in the *189 amount of $30,500, of Walter to be in the amount of $55,500, and of Philip to be in the amount of $23,341.04. The books also showed as payable to Walter the amount of $24,408.48 and to Philip the amount of $22,667.04. The gross book value of the assets owned by the partnership on January 1, 1928, was $180,322.36. The debts were $15,705.18. The fair market value of the assets of the partnership as of January 1, 1928, was $284,981.50. Under date of January 13, 1928, an agreement was executed reading in part as follows: "AN AGREEMENT made this 13th day of January, 1928, by and between George Corson, Walter H. Corson and Philip L. Corson, trading as G. & W. H. Corson, a partnership, (hereinafter called the 'vendor,') of the first part, and G. & W. H. CORSON, INCORPORATED, a corporation organized under the Laws of Delaware (hereinafter called the 'company,') of the second part. * * *
"NOW THEREFORE, This agreement witnesseth: I. That the vendor has sold, assigned, transferred and set over, and does hereby sell, assign, transfer and set over unto the company, its successors and assigns, all right, title and interest in and to the following described property, to wit: "All *190 their right, title and interest in the business carried on by them as a partnership, in accordance with a statement of assets and liabilities attached hereto and made a part hereof, and dated December 31, 1927. [1]
* * *
"II. The company hereby agrees, in consideration of said sale and upon the delivery of said property to it, to issue to the vendor and its nominees as hereinafter provided, and to such other nominees as the vendor shall in writing hereafter direct, at such times and in such amounts as they shall respectively direct, certificates of stock of the company to the aggregate amount of One Thousand (1,000) Preferred Shares and Three Thousand (3,000) shares, and said shares shall be deemed to be and are hereby declared to be full-paid shares and not liable to any further call, and the holders of such stock shall not be liable to any further payment thereon. "III. Said stock shall be issued as follows: Shares
To
Preferred
Common
George Corson
305
Walter H. Corson
495
1000
Philip L. Corson
100
1000
Bolton L. Corson
100
1000
1000
3000
"IV. *191 The delivery of the certificates for said shares to the above-named parties and their respective receipts for the same shall be a full discharge of each of the parties hereto to the extent thereof." No certificates of preferred stock were ever issued. On July 30, 1928, certificates for 1,000 shares each of the common stock were delivered to Walter, Philip, and Bolton L. Corson. On August 17, 1928, G. & W. H. Corson, by Walter H. Corson, George Corson, and Philip L. Corson, executed the following agreement: "WHEREAS, on the 13th of January, 1928, George Corson, Walter H. Corson, and Philip L. Corson, a Co-partnership, trading as G. & W. H. Corson, agreed to sell the assets of said partnership to G. & W. H. Corson, Inc., in consideration of the receipt from said corporation of 7% cumulative preferred stock in the amount of $100,000.00; "AND WHEREAS, said corporation, before the issuance of said preferred stock, has been anxious to issue in place thereof debenture bonds bearing 7% interest, due thirty years after date, callable at a premium, etc.; "AND WHEREAS, the partnership of G. & W. H. Corson has been asked to accept said bonds in lieu of said preferred stock. "NOW, THEREFORE, *192 THIS AGREEMENT WITNESSETH: That for and in consideration of the sum of One Dollar paid by G. & W. H. Corson, Inc., to the partnership of G. & W. H. Corson, receipt whereof is hereby acknowledged, it is hereby agreed by the partnership of G. & W. H. Corson that said partnership will, and hereby does, agree to accept, and accept, in place of the preferred stock hereinbefore referred to, the same amount of debenture bonds of the said corporation, bearing interest at 7%, payable thirty years after date, callable at a premium, etc. "IN WITNESS WHEREOF, we have hereunto affixed our hand and seals this 17th day of August, A.D. 1928. Witnesses present: Abbie W. Whitman, G. & W. H. Corson By: Walter H. Corson (SEAL), George Corson (SEAL), Philip L. Corson (SEAL), Partners." Attached to such agreement is the following: "George Corson, Walter H. Corson, and Philip L. Corson, a co-partnership, trading as G. & W. H. Corson, hereby direct that the $100,000.00 in debenture bonds to be delivered by G. & W. H. Corson, Inc. to this partnership, in payment of assets transferred by this partnership to said corporation, be delivered in the following amounts to the following persons: "Walter H. Corson
$49,500.00
Philip L. Corson
10,000.00
Bolton L. Corson
10,000.00
George Corson
30,500.00
*193 "IN WITNESS WHEREOF, we have hereunto affixed our hands and seals this 17th day of August A.D. 1928. Witnesses present: Troy C. Corson
Abbie W. Whitman
Walter H. Corson
(SEAL).
George Corson
(SEAL).
Philip L. Corson
(SEAL)."
Bolton was not at any time a member of the partnership of G. & W. H. Corson. He did not execute the agreements of January 13, 1928, and of August 17, 1928. Bolton had been employed by the partnership on a salary basis since sometime in 1926. As of December 31, 1927, the partnership was indebted to Bolton in the amount of $8,200.62 representing unpaid salary. When Bolton received the certificate for 1,000 shares of common stock of the petitioner on July 30, 1928 he cancelled his claim for unpaid salary. In his notice of deficiency the respondent disallowed petitioner's claim for percentage depletion on its limestone quarry without setting forth the reasons for such disallowance. The petitioner has failed to establish that respondent's determination was erroneous. Opinion LEMIRE, Judge: The question presented involves the petitioner's basis for depletion of its limestone deposits. The petitioner concedes that its deposits were *194 fully depleted for income tax purposes if it is required to take the transferor's basis, and the issue narrows to a determination whether the transaction, whereby petitioner in 1928 exchanged all of its authorized capital stock for the assets of the predecessor partnership, was a nontaxable exchange within the purview of section 112 (b) (5) of the Internal Revenue Code. From 1928 down to and including the taxable year 1945, the respondent has consistently taken the position that the aforementioned exchange was a nontaxable transaction. The petitioner has acquiesced in such determinations until the taxable year in question. The burden is upon the petitioner to establish the respondent's determination is erroneous. The basic purpose of section 112 (b)(5) is to permit the incorporation of businesses with the relative interests of the prior owners continuing unchanged. The record here shows that the business conducted by the partnership was somewhat hazardous and the primary purpose motivating the change to corporate form was the desire of the partners, George and Walter, to limit their personal liability. The petitioner contends that the exchange does not *195 qualify under section 112 (b) (5) as the proportionate interest provision of that section has not been met. Since there were only three transferors and the stock and securities were eventually issued to four individuals, it is apparent, when viewed in the light of the end result, that the transferors did not receive stock and securities in proportion to the property transferred. The plan, however, as evidenced by the corporate minutes and the written contracts, was to conduct the same business operated by the partnership in corporate form. The three partners were to transfer all of their right, title, and interest in the partnership assets for the issuance to the partners of all the stock and securities of the corporation. As the three partners were entitled to receive all of the stock of petitioner, they were at least momentarily in control of the corporation. There is no evidence here that at the time of the exchange the partners were not to receive stock and securities in proportion to the property transferred. The record establishes that Bolton was not a partner or transferor of property. It further shows that Bolton had no agreement with the partners to receive corporate stock *196 or securities. It does indicate that at some time not definitely fixed Bolton had an oral understanding with his father, Walter, and his brother, Philip, that he would be allowed to have a proprietary interest in the corporation. From the record it appears that George did receive debentures of the face value equal to his capital interest. Walter and Philip did not receive their proportionate interest. It is clear from the record that the stock and debentures which Bolton received were transferred to him as a nominee of his father and brother. Under the partnership agreement only Walter and Philip were obligated to pay the indebtedness of the partnership to Bolton. We think the fair inference to be drawn from this record is that Walter and Philip transferred a portion of the stock and securities which they were entitled to receive under the exchange to Bolton in consideration of the cancellation of his claim for unpaid salary. The arrangement between Walter, Philip, and Bolton in our opinion was a subsequent independent step and not a part of the transaction constituting the original exchange. Hence, it is not to be considered in determining whether the transaction was nontaxable within *197 the purview of section 112 (b) (5). In the light of this somewhat confused record we hold that the petitioner has not sustained its burden of showing that the respondent's determination was erroneous. So holding, no benefit would result from a discussion of the authorities cited and relied on by the petitioner. Therefore, the respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. Attached is a balance sheet of G. & W. H. Corson, Inc., dated January 1, 1928.↩